UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN GRAY,<br><br>                     Plaintiff,<br><br>    -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                    Defendants. | Civil Action No: 07 Civ. 9790 (SHS)(DCF) |

*[additional captions appear on the next page]*

**GRAY PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO
LIMITED OPPOSITION OF PLAINTIFF STEVEN GOLDSTEIN
TO GRAY PLAINTIFFS' MOTION FOR (1) CONSOLIDATION OF ERISA
ACTIONS, (2) APPOINTMENT OF INTERIM CO-LEAD PLAINTIFFS AND INTERIM
CO-LEAD COUNSEL AND (3) ENTRY OF [PROPOSED] PRETRIAL ORDER NO. 1**

Marian P. Rosner (MR-0410)
Robert C. Finkel (RF-2373)
Andrew E. Lencyk (AL-4329)
James Kelly-Kowlowitz (JK-9616)
**WOLF POPPER LLP**
845 Third Avenue
New York, New York 10022


Robert I. Harwood (RH-3286)
Daniella Quitt (DQ-1963)
Samuel K. Rosen (SR-3287)
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, NY 10022

*Counsel for the Gray Plaintiffs and
Proposed Interim Co-Lead Counsel
for the Class*

| | |
|---|---|
| SHAUN ROSE,<br><br>       Plaintiff,<br><br>  -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>       Defendants. | Civil Action No: 07 Civ. 10294 (SHS)(DCF) |
| MEREDITH TRANBERG,<br><br>       Plaintiff,<br><br>  -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>       Defendants. | Civil Action No: 07 Civ. 10341 (SHS)(DCF) |
| ANTON K. RAPPOLD,<br><br>       Plaintiff,<br><br>  -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>       Defendants. | Civil Action No: 07 Civ. 10396 (SHS)(DCF) |
| SAMIER TADROS,<br><br>       Plaintiff,<br><br>  -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>       Defendants. | Civil Action No: 07 Civ. 10442 (SHS)(DCF) |

| | |
|---|---|
| STEPHAN FIORINO,<br><br>        Plaintiff,<br><br>    -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>        Defendants. | Civil Action No: 07 Civ. 10458 (SHS)(DCF) |
| JAMES BOLLA,<br><br>        Plaintiff,<br><br>    -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>        Defendants. | Civil Action No: 07 Civ. 10461 (SHS)(DCF) |
| MARK GEROULO,<br><br>        Plaintiff,<br><br>    -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>        Defendants. | Civil Action No: 07 Civ. 10472 (SHS)(DCF) |
| ALAN STEVENS,<br><br>        Plaintiff,<br><br>    -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>        Defendants. | Civil Action No: 07 Civ. 11156 (SHS)(DCF) |
| STEVEN GOLDSTEIN,<br><br>        Plaintiff,<br><br>    -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>        Defendants. | Civil Action No: 07 Civ. 11158 (SHS)(DCF) |

| | |
|---|---|
| CHRIS SOUTHARD,<br><br>                          Plaintiff,<br><br>      -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                        Defendants. | Civil Action No: 07 Civ. 11164 (SHS)(DCF) |
| WILLIAM WOODWARD, *ET AL.*,<br><br>                        Plaintiff,<br><br>      -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                        Defendants. | Civil Action No: 07 Civ. 11207 (SHS)(DCF) |
| FRANCIA BRICK,<br><br>                        Plaintiff,<br><br>      -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                        Defendants. | Civil Action No: 07 Civ. 11369 (SHS)(DCF) |

**TABLE OF CONTENTS**

**Page**

I.   PROCEDURAL BACKGROUND .......................................... 1

II.  ARGUMENT .......................................................... 2

     A.  The Gray Plaintiffs Should Be Appointed Interim Co-Lead Plaintiffs .......... 2

         1.  Appointment Of a Co-Lead Plaintiff Structure Serves to Protect the
             Interests of the Class ......................................... 2

         2.  The Gray Plaintiffs Have a Far Greater Interest In the Outcome of This
             Litigation Than Plaintiff Goldstein .............................. 3

         3.  Plaintiff Goldstein's Not Signing a Release Upon the Termination of
             his Employment With Citigroup Does Not Improve His Suitability for
             Lead Plaintiff Status .......................................... 5

     B.  The Gray Plaintiffs' Counsel Should Be Appointed Co-Lead Counsel .......... 6

         1.  The Gray Plaintiffs' Counsel Have Substantial Experience in ERISA
             Class Actions and Other Complex Litigation, and the Claims Asserted
             in This Case And Have the Requisite Resources to Prosecute This
             Action ...................................................... 6

         2.  The Fact That Gray Plaintiffs Counsel Have the Support of the Vast
             Majority of Other Plaintiffs and Their Counsel, While Nobody Has
             Supported Plaintiff Goldstein, Is a Factor To Be Considered In
             Appointment of Interim Lead Counsel .......................... 9

III. CONCLUSION ........................................................ 10

Plaintiffs Stephen Gray, Samier Tadros and James Bolla (collectively, the "Gray Plaintiffs"), respectfully submit this memorandum in reply to the Limited Opposition of Plaintiff Steven Goldstein to the Gray Plaintiffs' Motion for entry of [Proposed] Pretrial Order No. 1 (a) consolidating the above-captioned actions arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§502(a)(2) and (3), and §§1132(a)(2) and (3); (b) appointing the Gray Plaintiffs as Interim Co-Lead Plaintiffs on behalf of a proposed class of participants and beneficiaries of the Citigroup 401(k) Plan and the Citibuilder 401(k) Plan for Puerto Rico (the "Class"); and (c) appointing the firms of Wolf Popper LLP ("Wolf Popper") and Harwood Feffer LLP ("Harwood Feffer") as Interim Co-Lead Counsel.

## I.   PROCEDURAL BACKGROUND

Due to the similarity of legal and factual allegations against Citigroup Inc. ("Citigroup" or the "Company") and various related fiduciaries of the Citigroup 401(k) Plan and the Citibuilder 401(k) Plan for Puerto Rico (collectively, the "Plan"), three competing motions to consolidate the above-captioned actions (collectively, the "ERISA Actions") were filed with the Court. Plaintiffs Gray and Bolla, both represented by Wolf Popper, and plaintiff Tadros, represented by Harwood Feffer, filed their original motion for consolidation of the ERISA Actions, appointment of Gray Plaintiffs as Interim Lead Plaintiffs and appointment of Wolf Popper and Harwood Feffer as Interim Co-Lead Counsel on November 26, 2007 ("Gray November 26, 2007 Motion.") Fifteen days later, on December 11, 2007, Plaintiff Goldstein filed both (1) his complaint ("Goldstein Complaint") and (2) motion to be appointed as interim lead plaintiff and to appoint his counsel, Stull, Stull & Brody ("Stull") as interim lead counsel ("Goldstein December 11, 2007 Motion.") Subsequently, on December 26, 2007, Plaintiffs Shaun Rose and Mark Geroulo (the "Rose Plaintiffs") also moved to consolidate the ERISA Actions, and to appoint themselves as interim co-lead plaintiffs and their counsel, Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin") and Schatz Nobel Izard, P.C.

("Schatz"), as the interim class counsel ("Rose December 26, 2007 Motion").

In accordance with the briefing schedule, on January 4, 2008, the Gray Plaintiffs duly filed their opposition to Plaintiff Goldstein's December 11, 2007 Motion and to the Rose Plaintiffs' December 26, 2007 Motion. On the same date, Plaintiff Goldstein filed his limited opposition to the Gray Plaintiffs' November 26, 2007 Motion ("Goldstein Opposition,") agreeing with the consolidation of the ERISA Actions (*Goldstein Opposition* at 2), but disputing the appointment of the Gray Plaintiffs as Interim Co-lead Plaintiffs and the appointment of Wolf Popper and Harwood Feffer as the Interim Co-Lead Counsel, contending instead that he should be appointed as the interim lead plaintiff and that his counsel, Stull, be appointed the interim lead counsel for the Class. *Goldstein Opposition* at 2 - 5.

Notably, the Rose Plaintiffs also filed an opposition motion on January 4, 2008 to the Gray Plaintiffs' November 26, 2007 Motion, but the following business day, on January 7, 2008, filed a notice that Schiffrin, one of the Rose Plaintiffs' proposed counsel for the Class, withdrew as counsel of record in this action.[1]

## II.  ARGUMENT

### A.  The Gray Plaintiffs Should Be Appointed Interim Co-Lead Plaintiffs

#### 1.  Appointment Of a Co-Lead Plaintiff Structure Serves to Protect the Interests of the Class

Plaintiff Goldstein submits, without citation, that "the class of 401(k) participants would be better served by the appointment of one individual than by the appointment of several apparently unrelated individuals." *Goldstein Opposition* at 2. Gray Plaintiffs respectfully disagree with Plaintiff Goldstein's position as numerous courts have recognized both the procedural and

---

[1] At 12:07 p.m. on January 10, 2008, the Gray Plaintiffs' counsel were informed by Schatz that the Rose Plaintiffs' proposed liaison counsel, Dealy & Silberstien, LLP ("Dealy"), is also dropping out of the action.

2

substantive benefits that a co-lead plaintiff structure provides in class-wide litigation. Case law in this very District has held that a "[co-lead plaintiff] structure provides flexibility and stability to the class if presented with the situation that either co-lead plaintiff fails to address certain interests within the class, drops out of the action or compromises the class in some fashion." *Malasicy v. IAC/InteractiveCorp.*, No. 04-7447, 2004 U.S. Dist. LEXIS 25832, at *14 (S.D.N.Y. Dec. 21, 2004). *See also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 03-8264, 2004 U.S. Dist, LEXIS 9571, at *82-83 (S.D.N.Y. May 27, 2004) (noting that the creation of a co-lead plaintiff structure provides greater stability in the action should a decision later be reached that either co-lead plaintiff cannot adequately represent the class).

The Court need look no further to see firsthand the benefits of a co-lead plaintiff structure than reviewing the procedural history of this very litigation. As stated *supra*, this week, Schiffrin, one of the Rose Plaintiffs' proposed class counsel, as well as their proposed liaison counsel, Dealy, withdrew, or are withdrawing, from the action, leaving the representation of the Rose Plaintiffs to Schatz alone.

If only one plaintiff were appointed as the lead plaintiff in the instant litigation, and if that plaintiff's counsel were subsequently to drop out of the action, the way Schiffrin had done, then the Class would be deprived of legal representation until a new lead counsel would be appointed again. Needless to say, such a development would undermine the efficient and orderly conduct of these proceedings, resulting in additional costs to the litigants as well as the loss of time and judicial resources. The entire process for appointment of a lead plaintiff(s) and/or lead counsel would have to be started anew, thus significantly delaying the effective resolution of the Plan participants' claims against Citigroup. Appointing a co-lead plaintiff structure instead, pursuant to which plaintiffs operate in a team-like fashion and coordinate with each other, will help to avoid unnecessary costs,

3

delay and/or duplicative efforts and allow the Court to adjudicate the relevant issues in an orderly manner. Accordingly, Gray Plaintiffs respectfully submit that their appointment as Interim Co-Lead Plaintiffs in the instant action would best serve the interests of the Class and facilitate the promotion of judicial economy and efficiency.

### 2. The Gray Plaintiffs Have a Far Greater Interest In the Outcome of This Litigation Than Plaintiff Goldstein

Plaintiff Goldstein also argues that he "has personally suffered the type of retirement savings loss which qualifies him as a lead plaintiff..." *Goldstein Opposition* at 3. Gray Plaintiffs respectfully submit, however, that they have the greatest financial stake in the outcome of this litigation as they have suffered losses of over $275,000 of their retirement savings. *See* Declaration of James Kelly-Kowlowitz, ¶ 4, dated January 4, 2008, previously filed with the Court ("Kelly-Kowlowitz Decl."). The breakdown of the Gray Plaintiffs' losses in their respective Plan accounts is as follows:

- As of September 30, 2007, Plaintiff Bolla had all of his retirement funds under the Citigroup 401(k) Plan invested in the Citigroup Common Stock fund, which had a balance of $273,842 as of that date. He owned approximately 5,868 shares through the Citigroup Common Stock Fund as of January 1, 2007. Citigroup stock fell from $55.70 on December 29, 2006 to $28.24 as of January 4, 2008 – a $27.46 decline. Plaintiff Bolla suffered a loss of $161,135 from the decline in Citigroup stock alone during 2007.

- As of March 31, 2007, Plaintiff Gray had $148,665.05 out of $203,386.07, or 73%, of his retirement funds invested in the Citigroup Common Stock Fund. He owned approximately 2,896 shares through the Citigroup Common Stock Fund as of January 1, 2007. Plaintiff Gray suffered a loss of $79,524 from the decline in Citigroup stock during 2007.

- As of March 31, 2007, Plaintiff Tadros had $27,327.98 out of $27,455.70, or 99.5%, of

4

his retirement funds invested in the Citigroup Common Stock Fund. He owned approximately 758 shares through the Citigroup Common Stock Fund as of January 1, 2007. Plaintiff Tadros suffered a loss of $20,882 from the decline in Citigroup stock alone during 2007.

Plaintiff Goldstein, on the other hand, submitted in his memorandum filed in support of his December 11, 2007 Motion that "his account balance has decreased over $28,000 during calendar year 2007," (*Id.* at 9-10), which comprises approximately one-tenth the size of the Gray Plaintiffs' losses due to Citigroup's wrongdoings. Accordingly, as the Gray Plaintiffs have by far the greatest financial stake in this litigation and are therefore the most highly motivated plaintiff group, they should be entrusted with representing the Class as Co-Lead Plaintiffs.[2]

### 3.   Plaintiff Goldstein's Not Signing a Release Upon the Termination of his Employment With Citigroup Does Not Improve His Suitability for Lead Plaintiff Status

Plaintiff Goldstein's Opposition raises a rather peculiar argument that the fact that he did not sign a release when his employment with Citigroup ceased as a result of Crossmar, Inc.'s (a subsidiary of Citigroup where Goldstein has been employed from 1995 until the present) sale to Misys LLC, bolsters his suitability for the lead plaintiff status in this litigation. Without further elaboration on the relevance of his argument to the instant proceedings, or any supporting authority, Plaintiff Goldstein notes that "[a] lead plaintiff's execution of a release to his former employer can sometimes raise issues in ERISA cases of this nature but that issue would nor arise with respect to Mr. Goldstein." *Goldstein Opposition* at 3. As Plaintiff Goldstein does not explain what the

---

[2] While ERISA litigation is not governed by the Private Securities Litigation Act ("PSLRA"), it is notable that in complex securities litigation, the PSLRA does recognize that the plaintiff who suffered the greatest financial loss is most suited to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (lead plaintiff appointment provisions of PSLRA providing for rebuttable presumption that most adequate plaintiff is one with the largest financial stake in the litigation). See also *Goldstein Opposition* at 3, note 1.

"issues" he is referring to are, or in what circumstances they "sometime" arise, the Gray Plaintiffs cannot at this time address his argument, except to note that plaintiff Tadros, one of the Gray Plaintiffs, is a current employee of Citigroup (where he has been employed since February 26, 2001). As plaintiff Tadros is still with the Company, whatever "issues" Plaintiff Goldstein suggests may arise in connection with Plan participants who signed a release of their former employer, would not apply to Mr. Tadros, under the same rationale that Plaintiff Goldstein seems to be using. Similarly, plaintiffs Gray and Bolla did not sign any releases to the best of their recollection, and both left Citigroup in the 1990s, well before the events at issue in this litigation.

    **B.**    **The Gray Plaintiffs' Counsel Should Be Appointed Co-Lead Counsel**
    **1.**    **The Gray Plaintiffs' Counsel Have Substantial Experience in ERISA Class Actions and Other Complex Litigation, and the Claims Asserted in This Case And Have the Requisite Resources to Prosecute This Action**

Without challenging either the work that the Gray Plaintiffs' counsel Wolf Popper and Harwood Feffer have done to advance the interests of the Class, or the resources that Wolf Popper and Harwood Feffer have dedicated and are willing to continue to dedicate to the instant litigation, and while acknowledging that "the Harwood and Wolf Popper firms are certainly highly experienced in class action cases generally" and that "the Harwood firm certainly has extensive ERISA experience (including ongoing co-lead counsel relationships with Stull in several cases,)" Plaintiff Goldstein contends that "on balance the class will be better served by the litigation experience and, especially, the settlement experience" of the Stull firm. *Goldstein Opposition* at 4-5.

With all due respect to the professionalism of Plaintiff Goldstein's counsel, Gray Plaintiffs submit that their counsel, Wolf Popper and Harwood Feffer, are best qualified to represent the interests of the Class in this action. Both Wolf Popper and Harwood Feffer are seasoned litigation firms, with substantial experience in litigating some of the most complex class actions, including employee lawsuits and ERISA violations on behalf of participants and beneficiaries in

6

employer-sponsored benefit plans, in this and other Districts throughout the nation, as set forth in the Gray Plaintiffs' moving papers previously filed with the Court on November 26, 2007 and the firms' respective resumes.

Neither the Gray Plaintiffs' litigation experience, nor their triumphs in settling complex actions are less than that of Stull.[3] Plaintiff Goldstein contends, without further supporting his position, that "Wolf Popper's experience in the ERISA cases involving AIG and Aon. . . while important, does not rise to the level of experience that Stull has . . ." *Goldstein Opposition* at 4. Plaintiff Goldstein does not explain why Wolf Popper's experience in the *In re AIG ERISA Litigation*, Master File No. 04-CV-9387 (JES) (S.D.N.Y.), and *In Re Aon ERISA Litigation*, Master File No. 04-cv-6875 (CRN) (N.D. Ill.), both major class-wide litigations under ERISA, is insufficient in his view. In fact, Plaintiff Goldstein's argument that Wolf Popper is somehow not as experienced as Stull in the field of ERISA litigation has no merit, as Wolf Popper, while certainly highly experienced in prosecuting violations of federal securities laws for over forty years and obtaining billions of dollar in recoveries for the plaintiffs, has successfully litigated major ERISA actions involving claims and allegations similar to the ones at issue in this litigation.[4] For instance, Wolf Popper, along with Harwood Feffer, took a leading role in briefing the extensive motions to dismiss by multiple parties in the *AIG ERISA Litigation*. Wolf Popper and Harwood Feffer prevailed on such motions *in toto*, and against one of the top defense firms in the country, Paul, Weiss, Rifkind,

---

[3]Some highlights of the Gray Plaintiffs' counsels' collective class action settlement experience include the more than $90 million settlement (representing approximately 78% of the class' claimed loss) in *In re Royal Dutch/Shell Transport ERISA Litig.*, 04-CV-1398-JWB-SDW (D.N.J.), which is one of the largest recovered amounts obtained in an ERISA breach of fiduciary duty case; the more than $14 million settlement in *In re Conagra Foods, Inc. ERISA Litig.*, No. 8:05-CV-00348 (D. Neb.); and the approximately $200 million settlement, three business days before the beginning of trial, in *In re Motorola Securities Litig.*, No. 03 C 287 (RRP) (N.D. Ill.).

[4]*See* firm resume attached as Ex. C to the Declaration of Marian P. Rosner, dated November 26, 2007, previously filed with the Court.

7

Wharton & Garrison LLP, which is also one of defendants' two main counsel in this litigation. Currently, Wolf Popper and Harwood Feffer are actively involved in deposition discovery in the *AIG ERISA Litigation*.

Plaintiff Goldstein's questioning of the extent of Wolf Popper's ERISA litigation experience is especially surprising since Wolf Popper has been at the forefront of the instant litigation since filing the first complaint on behalf of Plaintiff Gray on November 5, 2007, well in advance of any other plaintiff, and has, along with Harwood Feffer, done the most work of any other plaintiff firm involved in this action. Wolf Popper and Harwood Feffer have pursued all the appropriate measures which are customary in a class-wide litigation under ERISA. The two firms have extensively investigated Citigroup's alleged wrongdoings pertaining to Citigroup's mortgage securitization business, reviewed court actions and pleadings, as well as media and other reports, and communicated with Citigroup's general counsel regarding the preservation of documents. In addition, as is their standard practice in ERISA cases, the Gray Plaintiffs' counsel have: in mid-November, negotiated an agreement with Defendants' counsel for the production of plan-related documents, under ERISA §104(b), which they received from defendants in early December; corresponded with defendants requesting preservation of further documents; sent FOIA requests to the SEC and the Department of Labor; have communicated with a number of aggrieved plan participants; and conducted further factual research in preparation for drafting the consolidated complaint. They also retained and are consulting with a highly regarded financial/damages consultant, Financial Markets Analysis, LLC.[5] *See* Rule 23(g)(A)(I) (first factor court must consider in Rule 23(g) inquiry is work counsel has done in identifying or investigating claims in the action).

In stark contrast to the extensive work undertaken by the Gray Plaintiffs' counsel in this

---

[5] *See* Kelly-Kowlowitz Decl., ¶ 3.

8

action, while it is claimed in Plaintiff Goldstein's Opposition that Stull's experience is superior to that of Wolf Pooper, there is absolutely no mention in either the Goldstein Opposition or in any other submission of Plaintiff Goldstein to the Court, of any work that Stull has done to advance this litigation besides filing the Goldstein Complaint and moving to be appointed as the interim lead counsel.

Furthermore, Plaintiff Goldstein does not at all question the ERISA litigation experience of Wolf Popper's co-counsel in this action, Harwood Feffer, recognizing instead that "the Harwood firm certainly has extensive ERISA experience." *Goldstein Opposition* at 5. As Wolf Popper and Harwood Feffer have a close working relationship, having served as co-lead counsel in *In re AIG ERISA Litigation*, the two firms will coordinate throughout the prosecution of this litigation and apply their combined litigation expertise to the successful resolution of the claims asserted in this action against Citigroup and other related Plan fiduciaries to the benefit of the Class.

For these reasons, among others, as set forth herein, Wolf Popper and Harwood Feffer should be appointed Interim Co-Lead Counsel.

    2.    **The Fact That Gray Plaintiffs Counsel Have the Support of the Vast Majority of Other Plaintiffs and Their Counsel, While Nobody Has Supported Plaintiff Goldstein, Is a Factor To Be Considered In Appointment of Interim Lead Counsel**

Plaintiff Goldstein notes in a footnote to his Opposition that the fact that the majority of other plaintiffs and their counsel in this litigation support the appointment of the Gray Plaintiffs' counsel as interim co-lead counsel in this litigation is "irrelevant, " while admitting that "Stull has not requested or received the support of any other law firms which have filed cases." *Goldstein Opposition* at 5. Plaintiff Goldstein's position is unsurprising, given that by his own admission, his counsel does not have the support of any other plaintiff's firm involved in this action and is indicative of Stull's disregard for active cooperation and coordination of efforts by plaintiffs' counsel

9

in the prosecution of this action against Citigroup, et al. Plaintiff Goldstein also ignores Rule 23(g)(1)(B), the Advisory Committee Notes thereto (Paragraph (1)(C)), and the *Manual for Complex Litigation* (4th ed. 2004) § 21.272 (Criteria for Appointment), all of which direct the courts to consider "any" or "all" pertinent factors that may bear on counsel's ability to fairly and adequately represent a class. The support of the majority of the other plaintiffs and counsel in the case for the Gray Plaintiffs to serve as interim co-lead counsel is a very strong indicator, by highly experienced, qualified peer counsel, that, based on their experience in litigating with, and sometimes against, these firms, Gray Plaintiffs' counsel are the most qualified, experienced, capable and most effective counsel to serve as class counsel in this litigation, and are the counsel "best able to represent the [C]lass." Rule 23(g)(2) (quoted in Goldstein December 11, 2007 Moving Brief at 10). *See also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, MDL No. 05-1720, 2006 WL 2038650 at *2 (E.D.N.Y. Feb. 24, 2006) (support from "numerous non-lead counsel representing plaintiffs" is an important factor in appointing interim counsel under Rule 23(g)).

## II.  CONCLUSION

For the foregoing reasons, Gray Plaintiffs respectfully request that the Court deny Plaintiff Goldstein's motion to be appointed interim lead plaintiff and his counsel as interim lead counsel, and enter the Gray Plaintiffs' [Proposed] Pre-trial Order No. 1, consolidating the ERISA Actions, appointing the Gray Plaintiffs as Interim Co-Lead Plaintiffs, and appointing Wolf Popper and Harwood Feffer as Interim Co-Lead Counsel.

Dated: January 10, 2008

Respectfully submitted,

By: *[signature]*
Mariah P. Rosner (MR-0410)
Robert C. Finkel (RF-2373)
Andrew E. Lencyk (AL-4329)
James Kelly-Kowlowitz (JK-9616)
WOLF POPPER LLP

10

845 Third Avenue
New York, New York 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093

By: _____
Robert I. Harwood (RH-3286)
Daniella Quitt (DQ-1963)
Samuel K. Rosen (SR-3287)
HARWOOD FEFFER LLP
488 Madison Avenue
New York, NY 10022
Telephone: (212)-935-7400
Facsimile: (212)753-3630

*Counsel for the Gray Plaintiffs and Proposed Interim Co-Lead Counsel for the Class*

11